UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| B.E. TECHNOLOGY, L.L.C.,<br><br>        Plaintiff,<br>v.<br><br>FACEBOOK, INC.,<br><br>        Defendant. | Civil Action No. 2:12cv2769 JPM-tmp<br><br>Hon. Jon Phipps McCalla<br><br>JURY DEMAND |

## MEMORANDUM OF FACTS AND LAW IN SUPPORT OF FACEBOOK'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

**Table of Contents**

Page

I. INTRODUCTION ........................................................................................................... 1
II. FACTUAL BACKGROUND ......................................................................................... 3
    A. Facebook Has No Relevant Connection to this District ....................................... 3
    B. B.E. Technology Also Lacks Any Significant Connection to this District ........... 4
    C. All Presently Known Potential Non-Party Witnesses Reside Outside of Tennessee ............................................................................................................. 5
III. LEGAL STANDARD ..................................................................................................... 6
IV. ARGUMENT .................................................................................................................. 7
    A. This Case Could Have Been Brought in the Northern District of California ........ 7
    B. The Private Interest Factors Favor Transfer to the Northern District of California ............................................................................................................... 7
        1. The Convenience of Witnesses and Access to Sources of Proof Strongly Favor Transfer ............................................................................. 7
        2. The Availability of Compulsory Process Favors Transfer ...................... 10
        3. Costs of Attendance for Willing Witnesses Will be Lowest if this Case is Transferred to the Northern District of California ...................... 11
        4. No Delay or Prejudice is Caused by Transfer .......................................... 12
        5. B.E. Technology's Choice of Forum is Not Entitled to Any Deference ................................................................................................. 13
    C. The Public Interest Factors Favor Transfer to the Northern District of California ............................................................................................................. 14
        1. The Northern District of California has a Greater Interest in this Case .......................................................................................................... 14
        2. Court Congestion in the Western District of Tennessee Favors Transfer to the Northern District of California ........................................ 15
        3. The Remaining Public Interest Factors are Neutral ................................. 15
V. CONCLUSION .............................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)..................................................................................6, 7, 8

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011).............................................................................2, 9, 13, 14

*Morris v. Safeco Ins. Co.*,
   No. C 07-2890 PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ........................................10

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
   425 F. Supp. 2d 325 (E.D.N.Y. 2006) ......................................................................................7

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009)................................................................................................6

*Quality Gold, Inc. v. West*,
   No. 1:11-CV-891, 2012 WL 1883819 (S.D. Ohio, May 22, 2012) ..........................................7

*Returns Distribution Specialists, LLC v. Playtex Prods., Inc.*,
   No. 02-1195-T, 2003 WL 21244142 (W.D. Tenn., May 28, 2003) ..............................6, 8, 13

*In re TS Tech*,
   551 F.3d ............................................................................................................................14, 15

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)..................................................................................................................6

**STATUTES**

28 U.S.C.
   § 1391(c) ...................................................................................................................................7
   § 1404(a) ...............................................................................................................................1, 6

California Code of Civil Procedure
   § 1989.......................................................................................................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure
   45(b)(2) ...................................................................................................................................10

Pursuant to 28 U.S.C. § 1404(a), Facebook, Inc. respectfully moves to transfer this action to the United States District Court for the Northern District of California.

## I. INTRODUCTION

The Northern District of California is a clearly more convenient venue than this District for litigating B.E. Technology's claims. Facebook has extensive and lasting contacts with the Northern District of California. Its headquarters are in the Northern District in Menlo Park, California, and the vast majority of Facebook's potentially relevant documentation and witnesses are located there. Additionally, Facebook has identified nine individuals who possess knowledge regarding potentially invalidating prior art who live in or near the Northern District of California.

In contrast, neither Facebook nor B.E. has any significant contacts with this District. Facebook has no history of operations in this District—and other than the act of filing suit, neither does B.E. Technology. B.E.'s principal office is in Michigan, and the company's operations have been centered in Louisiana for the past decade. In a 2000 business plan, B.E. characterized itself this way: "B.E. Technology is a limited liability company formed under the laws of the State of Delaware in 1997. Its principal office of record is in Bay City, Michigan, and its operations are headquartered in New Orleans, Louisiana." (Armon Decl. Ex. 1, at 30.)[1] Since 2000, B.E. followed its business plan. It regularly filed annual disclosures with the Michigan Secretary of State. (Ex. 2.) And in December 2011, Martin David Hoyle (the inventor of the patent-in-suit) filed a disclosure with the United States Patent Office stating that he was a resident of New Orleans, and that B.E.'s principal address was in Saginaw, Michigan.[2] (Ex. 3.) As B.E.'s records demonstrate, B.E.'s business has always focused outside of Tennessee.

---

[1] All exhibits cited herein are attached to the Declaration of Orion Armon.
[2] Saginaw is approximately 14 miles from Bay City, Michigan, so it is possible that B.E. moved its principle office from Bay City to Saginaw between 2000 and the present.

1

B.E.'s Complaint alleges that its principal place of business is now Memphis. If so, B.E. is a newcomer to this District. B.E. did not register to do business in Tennessee until September 6, 2012—one business day prior to filing this lawsuit. (Ex. 4.) It is unclear whether B.E. has conducted any business in this District, but B.E.'s attorney, Robert Freitas, admitted in an interview that B.E. is a non-practicing entity—so it seems unlikely that B.E. ever will conduct any business in this District. (Ex. 5.)

Other than claiming that its principal place of business is now Memphis, B.E. has only a single, attenuated link to this jurisdiction: Mr. Hoyle (the inventor of the patent-in-suit) purchased a home in Cordova, Tennessee, on April 11, 2012. (Ex. 6, at 3.) But Hoyle's personal property is not attributable to B.E., and his relocation to Tennessee does not alter the fact that B.E.'s activities have always centered around Saginaw, Michigan and New Orleans, Louisiana. (Ex. 3, at 2.) Consequently, most (or all) of B.E.'s documents and witnesses likely will be found in Michigan and Louisiana—not Tennessee.

B.E. may oppose this motion by arguing that transfer is inappropriate in light of its recent contacts with this District, but Federal Circuit precedent unequivocally holds that a plaintiff's contacts with a district are entitled to no weight if the contacts were established in order to manipulate venue. *In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (holding that transferring documents to Texas and incorporating in Texas sixteen days prior to filing suit were venue manipulation and entitled to no weight). As in *Microsoft*, B.E.'s activities in this District are insubstantial and recent, so the Court should disregard the contacts in its transfer analysis.

Parties and non-parties alike will benefit from significantly lower costs and burdens associated with accessing sources of proof and attending trial if this litigation is transferred to the Northern District of California. The Northern District is clearly more convenient than the

Western District of Tennessee for litigating this patent infringement suit, so Facebook respectfully requests the Court to transfer this case to the Northern District of California.

## II.  FACTUAL BACKGROUND

B.E. filed suit against Facebook on September 7, 2012, alleging infringement of United States Patent No. 6,628,314 ("'314 patent").  (Dkt. No. 1.)  B.E. alleges that Facebook infringes at least Claim 11 of the '314 patent by "using a method of providing demographically targeted advertising."  (*Id*. at ¶ 11.)  This case is in its early stages.  Facebook's Answer was filed on December 31, 2012.  The Court has not held a case management conference, issued a scheduling order, or set a trial date.

B.E. separately filed lawsuits against a number of other defendants around the same time as this lawsuit that also involve the '314 and related patents.[3]

### A.  Facebook Has No Relevant Connection to this District

Facebook is a Delaware corporation headquartered in Menlo Park, California, in the Northern District of California.  (Decl. of Jeremy Jordan ¶ 2 (hereinafter, "Facebook Decl.").)  Insofar as the Complaint identifies accused Facebook systems or services, the vast majority of Facebook employees with knowledge of the development, implementation, and operation of such systems or services are located at Facebook's Menlo Park headquarters.  (*Id.* ¶ 4.)  Facebook maintains several data centers throughout the United States, but none of them are located in the Western District of Tennessee.  (*Id.* ¶¶ 3, 6.)  The vast majority of likely sources of proof (including documentation for all of Facebook's service offerings) are located at, or accessed and managed from, Facebook's headquarters.  (*Id.*)  While Facebook has one employee in Tennessee, the employee is located in Maryville, which is in the Eastern District.  Based on the allegations

---

[3] Case Nos. 12-cv-02830, 12-cv-02866, 12-cv-02767, 12-cv-02772, 12-cv-02781, 12-cv-02782, 12-cv-02783, 2:12-cv-02823, 12-cv-02824, 12-cv-02825, 2:12-cv-02826, 12-cv-02827, 12-cv-02828, 12-cv-02829, 12-cv-02831, 12-cv-02832, 12-cv-02833, and 12-cv-02834.

in B.E's Complaint, Facebook does not believe that he has any information relevant to this litigation. (*Id.* ¶ 5.) The employee in question is a Data Center Energy Manager who manages the energy supply arrangements for Facebook's data centers, and he has no involvement with, or responsibility for, the advertising functionality that is offered on the Facebook website. (*Id.*)

Furthermore, none of Facebook's evidence or witnesses reside in this District. Facebook has no offices in this District and knows of no employees who work in this District. (*Id.* ¶ 6.)

### B. B.E. Technology Also Lacks Any Significant Connection to this District

B.E. Technology is a Delaware company with a principal office in Saginaw, Michigan. (Ex. 7; Ex. 3, at 2.) B.E. only registered to do business in Tennessee one day prior to filing suit against Facebook, and its counsel for this litigation characterizes it as a non-practicing entity that does not make anything. (Ex. 4; Ex. 5.) According to a B.E. business plan that was created in 2000, B.E.'s operational headquarters was historically New Orleans, Louisiana, and its principal office was in Saginaw, Michigan. (Ex. 1, at 30.) B.E.'s periodic business filings in Michigan demonstrate that its principal office remains in Michigan. (Ex. 2; Ex. 3.)

B.E.'s registration with the Tennessee Secretary of State indicates that it has seventy-four members (Ex. 4.), but the company's other documents suggest that three individuals play leading roles in management. Of the three, only one is located in Tennessee:

- **Martin David Hoyle** is a principal of B.E. and the inventor of the patent-in-suit. (Ex. 1, at 30.) Prior to April, 2012, Mr. Hoyle was a resident of New Orleans. (Ex. 3, at 1.) On April 11, 2012, Mr. Hoyle purchased a home in Cordova, Tennessee. (Ex. 6, at 3.) B.E.'s filing with the Tennessee Secretary of State identifies Mr. Hoyle's home address as B.E.'s address in this state. (Ex. 6, at 3; Ex. 4.)

- **Randall R. Rupp** is a Certified Public Accountant in Saginaw, Michigan. Mr. Rupp is a managing member of B.E. (Ex. 8; Ex. 9.) Numerous B.E. documents indicate that Mr. Rupp is B.E.'s bookkeeper and is responsible for maintaining B.E.'s principal office in Michigan. (Ex. 3, at 2; Ex. 10.)

4

- **Mark J. McKinley** is a principal of McKinley Technology, Inc. in Bay City, Michigan. He is also a major shareholder and managing member of B.E. (Ex. 11, at 3; Ex. 12; Ex. 13.)

At the present time, Facebook is unaware of the identities or locations of the other seventy-one members of B.E. Technology.

### C. All Presently Known Potential Non-Party Witnesses Reside Outside of Tennessee

All of the presently known potential non-party witnesses affiliated with B.E. Technology reside outside of Tennessee. Notably, B.E.'s patent prosecution attorney resides in Michigan. (Ex. 14.) And according to B.E.'s Business Plan, its customers and business contacts—if any— were primarily located in Louisiana. (Ex. 1, at 30.) Incidentally, B.E.'s trial counsel, Robert Freitas, lives and works in the Northern District of California.

Similarly, Facebook is aware of at least nine individuals who possess knowledge regarding potentially invalidating prior art, and all of them live in or near California. Furthermore, five of the nine live and work in the Northern District:

- **Nick Grouf**, Co-Founder of Firefly Network, Inc.
  8687 Melrose Ave., Suite G400, West Hollywood, CA 90069. (Ex. 15.)

- **David Waxman**, Co-Founder of Firefly Network, Inc.
  8687 Melrose Ave., Suite G400, West Hollywood, CA 90069. (*Id*.)

- **Paul D. Angles**, Co-Inventor of U.S. Patent No. 5,933,811.
  1711 Purdue Avenue #11, Los Angeles, CA 90025. (Ex. 24; Ex. 25.)

- **Douglas O. Blattner**, Co-Inventor of U.S. Patent No. 5,933,811.
  10100 Plumosa Place, Las Vegas, NV 89134. (Ex. 25; Ex. 26.)

- **C. Douglass Thomas**, Inventor of U.S. Patent No. 6,128,663.
  2055 Junction Avenue, Suite #205, San Jose, CA 95131. (Ex. 16; Ex. 17.)

- **David W. Roth**, Co-Inventor of U.S. Patent No. 6,285,987.
  88 Perry Street, Apt. 740, San Francisco, CA 94107. (Ex. 18.)

- **Dylan Salisbury**, Co-Inventor of U.S. Patent No. 6,285,987.
  345 Spear Street, San Francisco, CA 94105. (Ex. 19; Ex. 20.)

- **A. Nathaniel Goldhaber**, Co-Inventor of U.S. Patent No. 5,794,210.
  300 Frank H. Ogawa Plaza, Suite 350, Oakland, CA 94612. (Ex. 21; Ex. 22.)

- **Gary Fitts**, Co-Inventor of U.S. Patent No. 6,285,987.
  1 Cyclotron Road Mail Stop 90R, Berkeley, CA 94720-2000. (Ex. 23.)

To develop its invalidity defenses, Facebook plans to subpoena these individuals for documents and testimony.

### III. LEGAL STANDARD

Pursuant to Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of Section 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

"A motion to transfer should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff." *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)). The district court has discretion to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen*, 376 U.S. at 622.

A threshold question for the Court is whether the case could have been filed in the district in which transfer is sought. *Returns Distribution Specialists, LLC v. Playtex Prods., Inc.*, No. 02-1195-T, 2003 WL 21244142, at *6 (W.D. Tenn., May 28, 2003). When that threshold is met, courts typically analyze a series of private interest and public interest factors to weigh the convenience of the parties and witnesses and interests of justice. *Id.* at *7.

The private interest factors are "1) the relative ease of access to sources to proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of

attendance for willing witnesses; and 4) all other practical problems that make a trial easy, expeditious and inexpensive." *Quality Gold, Inc. v. West*, No. 1:11-CV-891, 2012 WL 1883819, at *2 (S.D. Ohio, May 22, 2012) (citing *In re Genentech*, 566 F.3d at 1342).

The public interest factors are "1) the administrative difficulties flowing from court congestion; 2) the localized interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law." *Id.*

IV.  ARGUMENT

    A.  **This Case Could Have Been Brought in the Northern District of California**

This action could have been brought in the Northern District of California. Facebook is headquartered in the Northern District and was subject to personal jurisdiction there when this action was filed. (Facebook Decl. ¶ 2.) Accordingly, the threshold requirement for transfer is met. 28 U.S.C. § 1391(c).

    B.  **The Private Interest Factors Favor Transfer to the Northern District of California**

Each of the four private interest factors weighs in favor of transfer. Witnesses and documents that are relevant to this litigation are either located in the Northern District of California or are located outside of this District (and outside of Tennessee) in other locations that are equally accessible from the Northern District or this District. Consequently, litigation will be less costly and burdensome in the Northern District of California than it would be in this District.

        1.  **The Convenience of Witnesses and Access to Sources of Proof Strongly Favor Transfer**

The convenience of witnesses is often cited as the single most important factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1343 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). From a witness convenience standpoint, the

Northern District of California is clearly more convenient than this District. In analyzing the convenience of the parties and witnesses, courts in this District typically consider ease of access to sources of proof and the cost of obtaining the attendance of witnesses—and place greatest emphasis on the convenience of witnesses. *Returns Dist. Spec.*, 2003 WL 21244142, at *7 (citations omitted). Both of these factors indicate that the Northern District of California is clearly the most convenient jurisdiction for this litigation.

Facebook is headquartered in the Northern District of California, and its facilities, employees, and records are primarily located in Northern California. (*See* Facebook Decl. ¶¶ 3-4). The highly proprietary information and source code relating to the www.facebook.com website are stored in Facebook's various data centers, which are managed from Menlo Park. (*Id.* ¶ 3.) Nearly all of the information relating to Facebook's general operations, marketing, financials, and customer service is also located in the Northern District of California. (*Id.*)

As is true in most patent infringement cases, the majority of the relevant evidence will come from the defendant. *See In re Genentech*, 566 F.3d at 1345. This fact weighs heavily in favor of transfer because Facebook's documentary evidence and witnesses are already located in the Northern District of California. (Facebook Decl. ¶ 3.)

In contrast, the focal point for B.E. Technology's documents and witnesses is Michigan. Since at least the year 2000, B.E.'s principal office (and presumably its primary repository of business documents) has been located in or around Saginaw, Michigan. (Ex. 1, at 30; Ex. 3, at 2.) Mr. Rupp and Mr. McKinley, who are identified as managing members of B.E. Technology, reside in the Saginaw area, and B.E.'s patent prosecution counsel, James D. Stevens, also lives in Michigan. (*Id.*) The only other potential focal point for B.E. documents and witnesses is New Orleans, Louisiana, where B.E.'s business operations were historically focused. (Ex. 1, at 30.)

Saginaw, Michigan and New Orleans, Louisiana are geographically closer to this Court than to the Northern District of California, so it would be slightly more convenient to access documents and witnesses in Michigan and Louisiana from this District.[4] Nonetheless, airplane travel likely would be required for witnesses from Michigan and Louisiana to attend trial regardless whether this litigation proceeds in this District or in the Northern District of California. It would be only a minor additional burden for witnesses from Michigan or Louisiana to travel to the Northern District instead of this District. The burden is especially minor when considered in the context of the overall travel time associated with ground transportation, passing through security, and the other aspects of travel that comprise a domestic airplane trip.

In the aggregate, this litigation will be significantly less burdensome and costly for the parties if it is transferred to the Northern District of California. The overall ease and cost associated with accessing witnesses and relevant documents will be much lower in the Northern District because Facebook's employees and documents are concentrated there. Only Mr. Hoyle—who resides in this District—would directly offset those efficiencies. But Mr. Hoyle's contacts with this jurisdiction are too recent to be given any weight, and besides, he is only a single individual. *In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (holding that the plaintiff's choice of forum is entitled to no deference when contacts with the forum were manufactured for the purpose of manipulating venue). The majority of B.E. Technology's witnesses and documents appear to be in Michigan and Louisiana, and the burden associated with accessing them will be approximately the same regardless where this litigation occurs. On

---

[4] According to Google Maps distances between cities are as follows: Saginaw, MI to Memphis, TN (789 m); Saginaw, MI to San Jose, CA (2,438 m); New Orleans, LA to Memphis, TN (395 m); San Jose, CA to Memphis, TN (2,230 m).

balance, therefore, the Northern District of California offers major efficiencies in terms of accessing witnesses and documents that cannot be realized in this District.

### 2. The Availability of Compulsory Process Favors Transfer

There are a significant number of non-party witnesses located in California who are not subject to this Court's subpoena power, but who would be subject to trial subpoenas issued out of the Northern District of California. The Northern District of California has subpoena power over these non-party witnesses, as the Court's subpoena power extends throughout California under Federal Rule of Civil Procedure 45(b)(2) and California Code of Civil Procedure § 1989. *Morris v. Safeco Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719, at *5 (N.D. Cal. Dec. 19, 2008). Each of the following individuals possesses information regarding the validity of the patent-in-suit, and each is subject to the absolute subpoena power of the courts in the Northern District of California:

- **C. Douglass Thomas**, Inventor of U.S. Patent No. 6,128,663.
  2055 Junction Avenue, Suite 205, San Jose, CA 95131. (Ex. 16; Ex. 17.)

- **David W. Roth**, Co-Inventor of U.S. Patent No. 6,285,987.
  88 Perry Street, Apt. 740, San Francisco, CA 94107. (Ex. 18.)

- **Dylan Salisbury**, Co-Inventor of U.S. Patent No. 6,285,987.
  345 Spear Street, San Francisco, CA 94105. (Ex. 19; Ex. 20.)

- **A. Nathaniel Goldhaber**, Co-Inventor of U.S. Patent No. 5,794,210.
  300 Frank H. Ogawa Plaza, Suite 350, Oakland, CA 94612. (Ex. 21; Ex. 22.)

- **Gary Fitts**, Co-Inventor of U.S. Patent No. 6,285,987.
  1 Cyclotron Road Mail Stop 90R, Berkeley, CA 94720-2000. (Ex. 23.)

- **Nick Grouf**, Co-Founder of Firely Network, Inc.
  8687 Melrose Ave., Suite G400, West Hollywood, CA 90069. (Ex. 15.)

- **David Waxman**, Co-Founder of Firely Network, Inc.
  8687 Melrose Ave., Suite G400, West Hollywood, CA 90069. (*Id.*)

- **Paul D. Angles**, Co-Inventor of U.S. Patent No. 5,933,811.
  1711 Purdue Avenue #11, Los Angeles, CA 90025. (Ex. 24; Ex. 25.)

Similarly, the following individual also possesses information regarding the validity of the patent-in-suit. He does not reside in California, but because he lives so close, in Las Vegas, it makes it more likely that he would voluntarily appear to testify at trial if this litigation is adjudicated in the Northern District:

- **Douglas O. Blattner**, Co-Inventor of U.S. Patent No. 5,933,811.
  10100 Plumosa Place, Las Vegas, NV 89134-1999. (Ex. 25; Ex. 26.)

### 3. Costs of Attendance for Willing Witnesses Will be Lowest if this Case is Transferred to the Northern District of California

In the aggregate, costs of attendance for party witnesses will be lowest if this litigation is transferred to the Northern District of California. The vast majority of employees who possess technical knowledge of Facebook's "social networking and advertising product and service" that B.E. accuses of infringement reside in Northern California. (Facebook Decl. ¶ 4.) Consequently, the Northern District of California is far more convenient for all of Facebook's witnesses.

Costs of attendance for Mr. Hoyle will increase if this litigation is transferred, but costs of attendance are neutral for the rest of B.E.'s party witnesses because they would be approximately the same regardless where this litigation is adjudicated. For example, airfare between Bay City, Michigan and Memphis, Tennessee is approximately $329 roundtrip, whereas airfare between Bay City and San Francisco is approximately $361 roundtrip. (Ex. 27.) As these travel costs indicate, B.E.'s documents and witnesses outside of Tennessee are accessible at approximately the same cost regardless of where this litigation is located. Therefore, the cost of attendance for the majority of B.E.'s witnesses is neutral to the transfer analysis.

In the aggregate, the Northern District also offers lower overall costs of attendance for third-party witnesses. Eight non-party witnesses with knowledge of prior art reside in California,

11

and costs of attendance for these witnesses would be low. Separately, B.E.'s business documents suggest that there are third-party witnesses with knowledge of B.E.'s business operations located in New Orleans. (*See, e.g.*, Ex. 1, at 30; Ex. 3, at 2.) The cost of attendance for these witnesses is neutral to the transfer analysis because airfare between New Orleans and the Northern District of California is approximately the same as airfare between New Orleans and this District. For example, airfare between New Orleans and Memphis is approximately $377 roundtrip, and airfare between New Orleans and San Francisco is approximately $276 roundtrip. (Ex. 28.)

In the aggregate, costs of attendance will be far lower for parties and non-parties alike if this litigation is transferred to the Northern District of California. The vast majority of Facebook's likely employee witnesses are located in the Northern District, and they would not incur any appreciable travel costs associated with appearing for trial. (Facebook Decl. ¶ 4.) Similarly, at least five of nine non-party witnesses who possess information that is relevant to the validity of the patent-in-suit reside in the Northern District and they would not incur any appreciable travel costs associated with appearing at trial, either. The cost savings associated with current and former Facebook employees and California-based prior-art witnesses more than offsets Mr. Hoyle's increased travel costs. Travel costs associated with B.E.'s other witnesses will be approximately the same regardless of venue, and therefore are neutral.

### 4. No Delay or Prejudice is Caused by Transfer

The case is in its early stages. Discovery has not begun, no trial date has been set, and no other risks of delay or prejudice are likely. The early stage of this litigation weighs in favor of transfer, because B.E. will not be prejudiced by any interruption of the proceedings if a transfer is ordered. Additionally, this Court has not yet familiarized itself with the technology covered by the patent-in-suit or analyzed matters relating to claim construction, so judicial resources would not be wasted as a result of transfer.

### 5. B.E. Technology's Choice of Forum is Not Entitled to Any Deference

While B.E. Technology's choice of forum is a factor for consideration in the transfer analysis, the Court should afford no deference to B.E.'s decision to file suit here. *Returns Dist. Spec.*, 2003 WL 21244142, at *9. Where, as here, a patent owner's contacts with a forum are recent and superficial, the Court must consider whether the plaintiff established contacts with its preferred forum to make the forum appear convenient. *In re Microsoft Corp.*, 630 F.3d at 1364. If the court concludes that the plaintiff's contacts with the forum are attributable to forum shopping, it should disregard the plaintiff's contacts and its choice of forum. *Id.*

In *Microsoft*, the plaintiff incorporated under the laws of Texas sixteen days before filing suit, established an office in the Eastern District of Texas, and then filed suit there. *Id.* at 1362, 1365. The plaintiff did not employ individuals in the office, and the business was operated from the United Kingdom. *Id.* at 1362. After the district court denied a motion to transfer, the Federal Circuit reversed, noting that the plaintiff's offices "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue." *Id.* at 1365.

The facts of this case are analogous to *Microsoft*. B.E. Technology's principal office is in Saginaw, Michigan, and it has no history of doing business in this District. B.E. only registered to do business in Tennessee one day before it filed suit. (Ex. 3, at 2; Ex. 4.) Furthermore, Mr. Hoyle is a long-time resident of New Orleans and only purchased a home in Tennessee in April 2012, only five months prior to filing suit. (Ex. 6.)

As in *Microsoft*, B.E. Technology's choice of forum is entitled to no deference. Its contacts are too recent and ephemeral to be meaningful. The most reasonable interpretation of B.E.'s pre-suit activities is that B.E. established contacts here solely to anchor its lawsuit in this

District. Under these circumstances, B.E.'s contacts are entitled to no weight in the transfer analysis. *In re Microsoft*, 630 F.3d at 1364.

### C. The Public Interest Factors Favor Transfer to the Northern District of California

As a whole, the public interest factors also weigh in favor of transfer. The Northern District of California has a greater interest in this case than the Western District of Tennessee, and statistics on court congestion indicate that average trial times are marginally lower in the Northern District of California than they are in this District. The other public interest factors are neutral, so on balance, the public interest favors transfer to the Northern District of California.

#### 1. The Northern District of California has a Greater Interest in this Case

Facebook has been headquartered and doing business in the Northern District of California for more than eight years. (Facebook Decl. ¶ 2.) In contrast, B.E. Technology registered to do business in this District one day prior to filing suit. The parties' business operations (or lack thereof) in each district demonstrate that the citizens of the Northern District of California have the strongest interest in adjudicating this matter, because it involves a large, established business in their district. This District does not have a similar interest in this dispute because neither B.E. Technology nor Facebook have any history of operations here.

Moreover, the Federal Circuit has "unequivocally rejected" the argument that the citizens of this District have a "substantial interest" in having the case tried locally because some allegedly infringing products were made available in this District. *In re TS Tech*, 551 F.3d at 1321. As in *TS Tech*, Facebook's allegedly infringing products are available "throughout the United States" and thus the citizens of this District have "no more or less of a meaningful connection to this case than any other venue." *Id.*

### 2. Court Congestion in the Western District of Tennessee Favors Transfer to the Northern District of California

The most recent judicial caseload statistics indicate that the median time to resolve a case is 8.2 months in the Northern District of California, while the median time to resolve a case in this District is 10.4 months. (Ex. 29.) The slightly faster median time to resolution in the Northern District also favors transfer.

### 3. The Remaining Public Interest Factors are Neutral

The remaining public interest factors are neutral. Both courts are familiar with the substance and application of the federal patent law governing this case, and there are no conflicts of law to avoid. *See In re TS Tech*, 551 F.3d at 1320.

## V. CONCLUSION

This litigation could have been brought in the Northern District of California, and each of the public and private interest factors that courts consider when weighing transfer motions either supports transfer or is neutral. The Northern District of California is clearly a more convenient venue for this litigation than the Western District of Tennessee, and a transfer would serve the convenience of the parties and courts. For all of these reasons, Facebook respectfully requests the Court to transfer this litigation to the Northern District of California.

Dated: January 10, 2013                                 Respectfully submitted:


*/s/ Orion Armon*
COOLEY LLP

Michael Rhodes (*pro hac vice* motion to be filed)
mrhodes@cooley.com
COOLEY LLP
101 California Street
5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Heidi Keefe (*pro hac vice*)
hkeefe@cooley.com
Mark Weinstein (*pro hac vice* motion to be filed)
mweinstein@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Orion Armon (*pro hac vice*)
oarmon@cooley.com
Sara Radke (*pro hac vice*)
sradke@cooley.com
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021
Telephone: (720) 566-4000
Facsimile: (720) 566-4099

Heather J. Hubbard (TN # 23699)
Laura P. Merritt (TN # 26482)
WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union St., Suite 2700
Nashville, TN 37219-8966
615-850-6024
Fax: 615-244-6804
heather.hubbard@wallerlaw.com
laura.merritt@wallerlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served this 10th day of January, 2013, on the following counsel of record via the Court's Electronic Filing System:

| | |
|---|---|
| Craig Robert Kaufman | Adam Calhoun Simpson |
| Robert Edward Freitas | Richard M. Carter |
| Qudus B. Olaniran | MARTIN TATE MORROW & MARSTON |
| Hsiang Hong Lin | International Place, Tower II |
| FREITAS TSENG & KAUFMAN, LLP | 6410 Poplar Avenue, Suite 1000 |
| 100 Marine Parkway, Suite 200 | Memphis, TN 38119 |
| Redwood Shores, CA 94065 | 901-522-9000 |
| 650-593-6300 | asimpson@martintate.com |
| ckaufman@ftklaw.com | rcarter@martintate.com |
| rfreitas@ftklaw.com | |
| qolaniran@ftklaw.com | |
| jlin@ftklaw.com | |

                                              */s/ Orion Armon*