# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| B.E. TECHNOLOGY, LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:12-cv-02769-JPM-tmp |
| | ) | |
| FACEBOOK, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

## ORDER DENYING MOTION TO TRANSFER VENUE

Before the Court is Defendant Facebook, Inc.'s ("Defendant" or "Facebook") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed January 10, 2013. (ECF No. 29.) For the reasons that follow, the Motion is DENIED.

## I. BACKGROUND

This case concerns Defendant Facebook's alleged infringement of United States Patent No. 6,628,314 (the "'314 patent"). (ECF No. 1.) Plaintiff B.E. Technology, LLC ("Plaintiff or "B.E."), is the assignee of the '314 patent (ECF No. 38 at 2), currently owning "all right, title, and interest in the '314 patent, and has owned all right, title, and interest throughout the period" of the alleged infringement (ECF No. 1 ¶ 10).

B.E. alleges that Facebook infringed the '314 patent "by using a method of providing demographically targeted advertising

that directly infringes at least Claim 11 of the '314 patent either literally or under the doctrine of equivalents." (Id. ¶ 11.)

B.E. filed a Complaint in this Court on September 7, 2012. (ECF No. 1.) Facebook filed its Answer to the Complaint on December 31, 2012 (ECF No. 27), and its Motion to Transfer Venue on January 10, 2013 (ECF No. 29). B.E. filed its Memorandum in Opposition to Defendant's Motion to Transfer Venue on January 31, 2013. (ECF No. 38.) Facebook filed an Amended Answer on February 8, 2013. (ECF No. 44.) With leave of Court, Facebook filed a Reply Memorandum in Support of Its Motion to Transfer on February 19, 2013. (ECF No. 50.) On January 31, 2013, Facebook filed a Motion to Stay pending resolution of its Motion to Transfer Venue. (ECF No. 37.) The Court granted Facebook's Motion to Stay on February 8, 2013. (ECF No. 43.)

Facebook seeks to transfer this case to the Northern District of California, where its headquarters are located. (ECF No. 30 at 1.) To support its Motion, Facebook contends that its headquarters and the "vast majority of [its] potentially relevant documentations and witnesses" are located in the Northern District of California. (Id.) Further, Facebook asserts that it has "identified nine individuals who possess knowledge regarding potentially invalidating prior art who live in or near the Northern District of California." (Id.)

B.E. opposes Facebook's Motion to Transfer. B.E. is a
limited-liability company incorporated in Delaware. (ECF No. 1
¶ 2.) B.E. was originally registered in Michigan, but formally
registered to conduct business in Tennessee in September 2012.
(ECF No. 38 at 2.) B.E. contends that Memphis, Tennessee, is
its principal place of business. (ECF No. 1 ¶ 2.) Martin David
Hoyle ("Hoyle"), B.E.'s founder and CEO, is the named-inventor
of the '314 patent. (ECF No. 38 at 1, 2.) Hoyle asserts he has
been a resident of Tennessee since April, 2006. (Id. at 1, 2.)

B.E. argues that transfer is inappropriate because it has
substantial connections with this district. B.E. argues that
Hoyle has been "present in this District since 2006, and B.E.
since at least 2008," and that this district is B.E.'s principal
place of business. (Id. at 5.) B.E. also argues that none of
its witnesses are located in the Northern District of
California. (Id. at 8.) Further, B.E. argues that its
corporate documents, including documents relating to the
"conception and reduction to practice" of the patent-in-suit,
are located in this District. (Id. at 6-7.)

## II. STANDARD

Facebook moves the Court to transfer this case to the
Northern District of California pursuant to 28 U.S.C. § 1404(a).
(ECF No. 29.) The statute provides that "[f]or the convenience
of the parties and witnesses, in the interest of justice, a

3

district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a), the court must first determine whether the claim could have been brought in the transferee district. 28 U.S.C. § 1404(a) (allowing transfer to any other district in which the claim "might have been brought"). Once the court has made this threshold determination, the court must then determine whether party and witness "convenience" and "the interest of justice" favor transfer to the proposed transferee district. Reese, 574 F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted 2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010). In weighing these statutory factors, the court may still consider the private- and public-interest factors set forth in the pre-Section 1404(a) case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but courts are not burdened with "preconceived limitations derived from the forum non conveniens doctrine." Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955) (quoting All States Freight

v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal

quotation marks omitted); Esperson, 2010 WL 4362794, at *5. The

United States Court of Appeals for the Sixth Circuit has stated

that when deciding "a motion to transfer under § 1404(a), a

district court should consider the private interests of the

parties, including their convenience and the convenience of

potential witnesses, as well as other public-interest concerns,

such as systemic integrity and fairness, which come under the

rubric of 'interests of justice.'" Moore v. Rohm & Haas Co.,

446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been

interpreted broadly by courts, influenced by the individualized

circumstances of each case. The United States Court of Appeals

for the Federal Circuit has set forth a non-exhaustive list of

pertinent public-interest factors:

> The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law.

In re Acer Am. Corp., 626 F.3d 1252, 1254 (Fed. Cir. 2010); see

also In re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir.

2009) (finding the local-interest factor weighed heavily in

favor of transfer); Cincinnati Ins. Co. v. O'Leary Paint Co.,

676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering

additional factors such as the relative docket congestion of the transferor and transferee districts).

Initially, B.E. argues that there is a strong presumption in favor of its choice of forum, and that its choice of forum should not be disturbed unless the defendant carries its burden to demonstrate that the balance of convenience strongly favors transfer. (ECF No. 38 at 4-6.) B.E.'s argument is erroneously derived from the more stringent forum-non-conveniens standard. Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06-2108 Ml/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the appropriate private- and public-interest factors but relying on the forum-non-conveniens doctrine to accord strong deference to the plaintiff's choice of forum), with OneStockDuq Holdings, LLC v. Becton, Dickinson, & Co., No. 2:12-cv-03037-JPM-tmp, 2013 WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89, 92-93 (N.D. Ohio 1991) (recognizing defendants need to make a lesser showing to overcome plaintiff's choice of forum under § 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994). Although there is a strong presumption in favor of the plaintiff's choice of forum under the doctrine of forum non conveniens, under § 1404(a), a plaintiff's choice of forum may be considered, but is entitled to less deference. Discussing the difference between the common-law doctrine of forum non

6

conveniens and the federal transfer-of-venue statute in <u>Norwood</u>,
the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to
> do more than just codify the existing law on forum non
> conveniens. . . . [W]e believe that Congress, by the
> term "for the convenience of parties and witnesses, in
> the interest of justice," intended to permit courts to
> grant transfers upon a lesser showing of
> inconvenience. This is not to say that the relevant
> factors have changed or that the plaintiff's choice of
> forum is not to be considered, but only that the
> discretion to be exercised is broader.

<u>Norwood</u>, 349 U.S. at 32; <u>see also</u> <u>Lemon v. Druffel</u>, 253 F.2d
680, 685 (6th Cir. 1958) ("The choice of the forum by the
petitioner is no longer as dominant a factor as it was prior to
the ruling in <u>Norwood v. Kirkpatrick</u>[.]"); <u>Esperson</u>, 2010 WL
4362794, at *5-6.

Defendant's burden under § 1404(a) is to demonstrate that a
change of venue to the transferee district is warranted. <u>See</u>
<u>Eaton v. Meathe</u>, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D.
Mich. May 18, 2011); <u>Amphion, Inc. v. Buckeye Elec. Co.</u>, 285 F.
Supp. 2d 943, 946 (E.D. Mich. 2003); <u>Roberts Metals, Inc.</u>, 138
F.R.D. at 93. "Merely shifting the inconvenience from one party
to another does not meet Defendant's burden." <u>McFadgon v. Fresh
Mkt., Inc.</u>, No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn.
Oct. 21, 2005). "[T]he movant must show that the forum to which
he desires to transfer the litigation is the more convenient one
vis a vis the Plaintiff's initial choice." <u>Roberts Metals,</u>

*Inc.*, 138 F.R.D. at 93 (quoting *Mead Corp. v. Oscar J. Boldt Constr. Co.*, 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal quotation marks omitted).  If the court determines that the "balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of [forum] should prevail."  *Stewart v. Am. Eagle Airlines, Inc.*, No. 3:10-00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

## III. ANALYSIS

Facebook asserts that B.E. could have brought this action in the Northern District of California.  (*See* ECF No. 30 at 7.) B.E. does not dispute this assertion, nor does it dispute that this action could have been brought in the Northern District of California.  (*See* ECF No. 38 at 4.)  The Court agrees that B.E. could have brought suit in the Northern District of California. Therefore, the only issue remaining is whether the balance of the statutory factors — the convenience to the witnesses, the convenience to the parties, and the interest of justice — favors transfer to the Northern District of California.  The Court will address each statutory factor separately and balance these factors to determine whether transfer to the Northern District of California is proper pursuant to § 1404(a).

### A.  Convenience of the Witnesses

When asserting that a transferee district is more convenient for witnesses, a party "must produce evidence

regarding the precise details of the inconvenience" of the forum chosen by the plaintiff. Esperson, 2010 WL 4362794, at *8. To satisfy its burden, the movant must do "more than simply assert[] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." Id. (quoting Roberts Metals, Inc., 138 F.R.D. at 93). Further, "[t]o sustain a finding on [this factor] . . . the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience." Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *3 (W.D. Mich. May 18, 2011) (quoting Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted). It is the "materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry. Rinks, 2011 WL 691242, at *3.

Facebook contends that witness convenience favors transfer to the Northern District of California. (ECF No. 30 at 7-10; ECF No. 50 at 6-7.) To support this contention, Facebook asserts that a majority of the witnesses on which it intends to rely are located in the transferee district or throughout

California.  These witnesses include Facebook employees "knowledgeable about the design, development, and operation of the www.facebook.com website" (Jordan Decl., ECF No. 30-31, ¶ 4) and at least nine non-party witnesses related to prior-art patents.  (ECF No. 30 at 5-6.)

In response, B.E. argues that "transfer to the Northern District of California would be equally inconvenient to B.E.'s witnesses because none of them reside there."  (ECF No. 38 at 8.)  B.E. identifies Hoyle, the named-inventor of the patent-in-suit and founder and CEO of B.E., as its key witness who is located in the Western District of Tennessee.  (Id. at 8.)  B.E. notes that Facebook's assertion that there may be additional B.E. witnesses located in Louisiana or Michigan is false.  B.E. claims it has no witnesses in Louisiana or Michigan and that it is "unaware of any third-party witnesses with knowledge of B.E.'s business operations located in New Orleans."  (Id. at 8 n.2 (quoting ECF No. 30 at 12 (internal quotation marks omitted)).)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the witnesses separately.  See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty

consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.").

### 1. Party Witnesses

Facebook asserts that "[t]he vast majority of Facebook employees knowledgeable about the design, development, and operation of the www.facebook.com website are located at Facebook's Menlo Park headquarters," located in the transferee district. (Jordan Decl., ECF No. 30-31, ¶ 4.) Facebook recognizes that it does have one employee located in the Eastern District of Tennessee, but asserts that this employee does not have information pertinent to the instant case. (ECF No. 30 at 4; see also Jordan Decl., ECF No. 30-31, ¶ 5.) In its Reply, Facebook defends its general identification of potential employee-witnesses by stating, "courts may infer that witnesses are located near the center of the allegedly infringing activities, and that witnesses involved in design and development of accused products are material to the transfer analysis." (ECF No. 50 at 7 (citing Koh v. Microtek, Int'l, Inc., 250 F. Supp. 2d 627, 636-37 (E.D. Va. 2003)).) Facebook also contends that B.E.'s infringement allegations "implicate its entire business," and as a result, "[i]t would be misleading for Facebook to pretend that it could identify a subset of

employees as most-relevant or its trial witnesses at this early stage of the litigation." (Id. at 8.)

Other than a general statement that transfer would "be significantly less burdensome and costly for the parties," Facebook does not provide any evidence showing that any of its employees will be unwilling to testify in this district if asked to do so or how such employees will be "severely inconvenienced" if the case proceeds in this district. See Esperson, 2010 WL 4362794, at *8. Moreover, courts have noted that "normally a corporation is able to make its employees available to testify when needed." Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn. Mar. 6, 2001); see also Zimmer Enters. V. Atlandia Imps., Inc., 478 F. Supp. 2d 983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience of witnesses who are employees "will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses"). Accordingly, it appears that Facebook's employees will be able to attend absent any evidence to the contrary.

Therefore, regarding Facebook employees, Facebook does not satisfy its burden. Facebook argues that the burden of proceeding in the transferee district is reduced when comparing its own employee witnesses and Hoyle, and the burden is the same

12

when comparing travel to either district for B.E.'s potential witnesses from Michigan or Louisiana. (ECF No. 30 at 9.) B.E. asserts, however, that it has no witnesses in Michigan or Louisiana, and that its key witness is Hoyle, located in the transferor district. Accordingly, it is equally inconvenient for B.E.'s identified witness – Hoyle – to travel to the Northern District of California. Therefore, because § 1404(a) provides for transfer "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," distance of travel for employee witnesses does not weigh in favor of transfer. Hunter Fan, 2006 WL 1627746, at *2 (citing Van Dusen v. Barrack, 376 U.S. 612, 645–46 (1964)).

Facebook further argues that this factor strongly favors transfer because its employees are "primarily" located in the transferee district, whereas B.E. only identified one witness, Hoyle, who is also an interested party. (ECF No. 30 at 8.) Facebook asserts that Hoyle's "purported inconvenience . . . is minor when balanced against the cost and inconvenience to Facebook's potentially numerous party witnesses with knowledge of its accused products." (ECF No. 50 at 7.) Although Facebook does not specifically list its witnesses, and though its assertion is imprecise as to the materiality of the witnesses' testimony, it is not asserted that their testimony will not be relevant and material in this case. Facebook's general

statement, however, that it believes material witnesses are located in California does not aid the court in assessing (1) what the testimony of such additional material witnesses will be; (2) whether such witnesses will be unable to attend; or (3) whether and to what extent such witnesses will be inconvenienced by testifying in this district.

Facebook relies on a United States District Court for the Eastern District of Virginia case, Koh v. Microtek International, Inc., 250 F. Supp. 2d 627 (E.D. Va. 2003), for the proposition that although a motion to transfer must normally contain specifics as to the "names, titles and locations of witnesses and the content of their testimony," that district courts can infer witnesses are located near the infringing activities and "that witnesses involved in design and manufacture of the accused products are material to the transfer analysis." (ECF No. 50 at 7 (citing Koh, 250 F. Supp. 2d at 636-37) (internal quotation marks omitted).) Recognizing that Koh is persuasive authority, the Court also notes that Facebook misapplies it to the facts of the instant case. In Koh, the court stated, "although the Movants have not set out specifically any potential testimony, they have identified one individual who is located in California and two entities located in California, which participated in conception and reduction to practice of the accused product." Koh, 250 F. Supp. 2d at 637.

In the instant case, Facebook has not identified specific witnesses that "participated in [the] conception and reduction to practice of the accused products." To the contrary, Facebook has only generally asserted that the "vast majority of [its] employees knowledgeable about the design, development, and operation" if its website are located in the transferee district, leaving open the possibility that material witnesses may be located elsewhere. (Jordan Decl., ECF No. 30-31, ¶ 4.) Facebook cannot rely on such "bare allegations" to satisfy its burden. Esperson, 2010 WL 4362794, at *8.

While B.E. did not specifically identify any witnesses beyond Hoyle, B.E. does not have the burden to do so. Despite B.E. not identifying any individuals beyond Hoyle, Facebook's general identification of material witnesses who are Facebook employees does not satisfy its burden on this factor. A simple numerical advantage is insufficient on the issues raised by a motion to transfer.

Moreover, B.E. argues that "[i]t is likely that Facebook's California-based employees will be deposed in California where B.E.'s lead counsel is based." (ECF No. 38 at 10.) This further indicates that the witness-convenience factor does not weigh in favor of transfer. See Hunter Fan, 2006 WL 1627746, at *2 (finding relevant that the plaintiff planned to take depositions of the defendant's witnesses in California in

15

determining that the witness convenience factor did not favor transfer).

### 2. Non-Party Witnesses

While convenience to party witnesses is an important consideration, "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." Steelcase Inc. v. Smart Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004) (citation omitted) (internal quotation marks omitted).

Facebook argues that it intends to rely on at least nine non-party witnesses who have knowledge of prior art related to the patent-in-suit. (ECF No. 30 at 5-6, 10-11; ECF No. 20 at 8-9.) Facebook states that it intends to subpoena "these individuals for documents and testimony" to "develop its invalidity defenses." (ECF No. 30 at 6.) Facebook also asserts that one additional prior-art witness lives outside the subpoena power of California, but because he lives in Las Vegas, Nevada - near the transferee district - it is "more likely that he would voluntarily appear to testify at trial if this litigation is adjudicated in the Northern District [of California]." (Id. at 11.) To support its contention, Facebook submits these nine prior-art witnesses and their last-known addresses based on webpages and documents filed with the United States Patent and Trademark Office (Id. at 10-11 (citing ECF Nos. 30-16 through

30-27).)  Facebook claims that it will not be able to compel

these witnesses to testify at trial if the case remains in

Tennessee, but will be able to compel eight of the nine

witnesses to testify at trial in the Northern District of

California.  (Id. at 10-11.)

B.E. argues that the convenience of third-party witnesses

is not entitled to great weight in the instant case because

Facebook has not established that the "third party testimony

will be material or important."  (ECF No. 38 at 10.)  B.E.

argues that Facebook has not stated the "relevance, materiality,

and importance" of the third-party witnesses' testimony.  (Id.

at 12.)  B.E. further argues that prior-art testimony is "almost

certain to be severely limited at the time of trial" and,

therefore, such testimony does not weigh in favor of transfer.

(Id. at 10-11.)

B.E. acknowledges that Facebook has identified specific

third-party witnesses regarding prior art and that those living

outside the transferor district would not be subject to its

subpoena power, but states that "Facebook does not address the

relevance, materiality, and importance of the testimony any

witness who allegedly could not be subpoenaed might give."  (Id.

at 11-12.)  Further, B.E. argues that Facebook "fails to

establish that any of these individuals have themselves

expressed that they would be inconvenienced by the case

17

remaining in the Tennessee or that they would not attend trial if [it] takes place here."  (Id. at 11.)

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court.  See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4.  Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of the case.  Rinks, 2011 WL 691242, at *4.  A federal court in the Northern District of California would be able to compel the majority of the identified prior-art witnesses to testify at trial.  See Fed. R. Civ. P. 45(b)(2).  In contrast, the prior-art witnesses would be subject to the subpoena power in this district, see Fed. R. Civ. P 45(c)(3)(A)(ii), but would be available for deposition in the Northern District of California if unwilling to testify in this district.  Therefore, the testimony of such witnesses potentially would "not be live and therefore could be less persuasive."  Rinks, 2011 WL 691242, at *4.

The Court finds that Facebook has met its burden to show the nature of the third-party witnesses testimony, and that the testimony is likely material to Facebook's invalidity and non-infringement contentions.  To the extent the non-party

18

witnesses' testimony may be presented by deposition, witness inconvenience would not be an issue.  While Facebook sets forth the fact that the prior-art witnesses would not be subject to subpoena in the Western District of Tennessee, this general statement is not sufficient to allow the Court to determine whether live testimony of Facebook's non-party witnesses is necessary.  As a result, this factor weighs only slightly in favor of transfer.

**B.    Convenience of the Parties**

Facebook argues that the Northern District of California is "clearly more convenient."  (ECF No. 30 at 8.)  While Facebook organizes its arguments somewhat differently than the Court, the Court finds the considerations relevant to the convenience-of-the-parties factor are the location of the sources of proof and the parties' financial hardships due to litigation in the chosen forum.

**1.    Location of Sources of Proof**

Facebook argues that "the vast majority of likely sources of proof (including documentation for all of Facebook's service offerings) are located at, or accessed and managed from, Facebook's headquarters" in the transferee district.  (ECF No. 30 at 3.)  More specifically, Facebook contends that the "source code relating to the www.facebook.com website" and "[n]early all of the information relating to [its] general operations,

19

marketing, financials, and customer service" are located in the
Northern District of California.  (Id.)

Additionally, Facebook presumes that B.E.'s documents are
located in Michigan, not the Western District of Tennessee, as
B.E.'s office address was listed on a 2011 patent application as
Saginaw, Michigan.  (ECF No. 30 at 8 (citing ECF No. 30-4 at
PageID 158).)  To further support this presumption, Facebook
argues that the Court should infer that B.E.'s "financial
records, tax records, and patent prosecution files all reside in
Michigan" because Hoyle stated that B.E.'s accountant and patent
attorney live in Michigan, B.E. maintained a registered office
there, and B.E. "conceded" its documents located in Michigan are
not numerous.  (ECF No. 50 at 5 (quoting ECF No. 38 at 6
("[F]ew, if any documents relevant to issues in this action are
located in Michigan."))).)  While recognizing that B.E. may have
its own documents relevant to the litigation, Facebook argues
that B.E.'s "assertion" regarding any inconvenience related to
these sources of proof "overstates the volume of documents that
are likely located in Tennessee."  (Id. at 6.)

B.E. argues that, because its CEO resides in the Western
District of Tennessee, its corporate documents and records,
"including documents demonstrating the conception and reduction
to practice of [the patents-in-suit]," are located in the
Western District of Tennessee.  (ECF No. 38 at 5, 7.)  B.E.

notes that Facebook's sources of proof are "maintained in data centers that," based on the declaration of a Facebook litigation paralegal "are not necessarily located within the Northern District of California." (Id. at 13 (citing Jordan Decl., ECF No. 30-31, ¶ 3).)  Contrary to Facebook's assertions, B.E. argues that its own sources of proof are located in Tennessee, not Michigan or Louisiana, and have been maintained in Tennessee for years.  (Id. at 12.)  B.E. also contends that "the location of relevant documentary evidence is increasingly less important in deciding motions to transfer," and that because documents can be exchanged electronically, the weight given this factor should be minimal.  (Id. at 13.)  B.E. finally argues that this factor does not weigh in favor of transfer because "it can be expected that Facebook will eventually produce its documents to B.E.'s lead counsel in California, not to B.E. in Tennessee."  (Id.)

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor.  This notion has been expressly rejected by the Federal Circuit.  See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) (reversing a district court that did not consider the factor, stating, "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely"); In re Genentech, 566 F.3d at 1345-46

(finding clear error where a district court "minimized the inconvenience of requiring the petitioners to transport their documents by noting that '[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission'" (quoting Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009))).

The Court agrees that it is likely that the sheer volume of documents Facebook has in its possession outnumbers the patent-related documents in B.E.'s possession, but the Court disagrees that this is enough to tip the balance in favor of transfer.

First, the Court finds that Facebook's presumptions about the locations of B.E.'s proof do not contradict B.E.'s argument that relevant documents are located in the transferor district. Further, the Court does not find that the location of B.E.'s accountant or patent attorney undermines its argument that sources of proof relevant to the instant case are located in the transferor district.

Second, the Court finds Facebook has indicated that "nearly all," but not all, of its relevant documents are located in the transferee district and B.E. has shown that relevant documents are located in the transferor district. Accordingly, the Court finds that both parties maintain documents in their respective

districts; that both sets of documents will be integral to the
proceedings; and that Facebook will be expected to serve its
documents on B.E.'s counsel in California, not in the Western
District of Tennessee (see ECF No. 26 at 13).  Taken together,
the aforementioned facts indicate that as to the location of the
sources of proof, the Northern District of California may be a
somewhat more convenient venue for the parties to the instant
case.  This factor, however, is not sufficient, by itself, to
require transfer.

### 2.    Financial Hardships Attendant to Litigating in the Chosen Forum

Regarding financial hardships attendant to litigating in
the Western District of Tennessee, Facebook presents its
arguments in terms of the costs for its potential witnesses.
Facebook argues that its potential employee-witnesses are all
located in the Northern District of California.  (ECF No. 30 at
8.)  As a result, Facebook contends that "[i]n the aggregate,
this litigation will be significantly less burdensome and costly
for the parties if it is transferred." (Id. at 9.)  Facebook
asserts that the costs-of-attendance factor is neutral for all
of B.E.'s witnesses except Hoyle, as Facebook believes these
other witnesses would have to fly from Michigan or Louisiana
regardless of whether the litigation takes place in the Western
District of Tennessee or the Northern District of California.

(Id.)  Facebook also states that the cost of attendance for its third-party witnesses would be lower if the case were transferred to the Northern District of California.  (Id. at 11-12.)

B.E. states that it "would face a financial burden by having to litigate in the Northern District of California," while Facebook does not assert that it is "financially incapable of bearing the expense of litigating" in the transferor district.  (ECF No. 38 at 14.)  B.E.'s CEO Hoyle states that "B.E. will incur expenses it will not incur if the case remains in Memphis."  (Hoyle Decl., ECF No. 38-1, ¶ 9.)

The Court has considered "the relative ability of litigants to bear expenses in any particular forum" among the factors in a § 1404(a) case.  Ellipsis, Inc. v. Colorworks, Inc., 329 F. Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case, B.E.'s CEO stated that the company will incur additional expenses, but it has not shown with any specificity how detrimental those expenses would be to the company.  Further, while Hoyle stated that his personal financial status would be adversely affected by litigating in California, he did not state why or how his personal finances would impact B.E., the party to the instant case.  (See Hoyle Decl., ECF No. 38-1, ¶ 9.)  The Court agrees that Facebook has not asserted that it cannot bear the expense of litigating in the Western District of Tennessee,

24

but the Court does not find this to be a dispositive factor in denying Facebook's Motion. But see Siteworks Solutions, LLC v. Oracle Corp., No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008) (finding the relative financial strengths of the parties did not weigh in favor of transferring the case, as the party opposed to transfer showed it "ha[d] no net worth, very little revenue, no gross profits, no assets, and [would have to] borrow from its owners in order to pay the litigation expenses"). The Court finds that the evidence presented is insufficient to make a showing that B.E. or Facebook will be adversely affected by litigating in either forum. The paramount consideration remains whether the Northern District of California is more convenient to the parties than B.E.'s chosen forum.

With respect to convenience, the Court finds this factor does not weigh in favor of transfer. While Facebook has made a showing that costs would be reduced for its potential witnesses if the case were transferred, it has not made a showing that its business would be disrupted in an appreciable manner should the case remain in the Western District of Tennessee. Additionally, B.E. has made showing that its business would be disrupted in having to prosecute the instant case in California. Facebook has shown that the Northern District of California would be a more convenient forum for it, but it has not shown that the

Northern District of California is a more convenient forum for both parties.  As a result, the hardship to Facebook does not indicate transfer is more convenient.

### C.  Interests of Justice

Facebook argues that transfer to the Northern District of California is appropriate based on additional considerations that pertain to the interests-of-justice factor.  (ECF No. 30 at 14-15; ECF No. 50 at 9-10.)  These considerations include the "public-interest concerns, such as systemic integrity and fairness," of the proceedings.  See Moore, 446 F.3d at 647 n.1. In the instant case, the Court will consider the relative trial efficiency of the transferee and transferor districts and the localized interest in the litigation.

### 1.  Trial Efficiency

Facebook argues that the "average trial times are marginally lower in the Northern District of California" than in the Western District of Tennessee and, therefore, transfer is warranted.  (ECF No. 30 at 1-15.)  Comparing the median time periods from filing to disposition of a civil case in the two districts, Facebook notes that the median time in the Northern District of California is 8.2 months, while the median time in the Western District of Tennessee is 10.4 months.  (Id. at 15 (citing ECF No. 30-30).)  Responding to B.E.'s statistics regarding median time from filing to trial, Facebook notes that

the statistics "are equivocal regarding which district would resolve B.E.'s claim the quickest, and therefore, this factor is neutral to the transfer analysis." (ECF No. 50 at 10.)

B.E. argues that transfer to the Northern District of California "would likely delay trial of this case by at least one year." (ECF No. 38 at 15.) B.E. cites the 2011 Federal Court Management Statistics for both districts to illustrate that the median time from filing to trial in the Northern District of California was 35.4 months, while the median time from filing to trial in the Western District of Tennessee was 20.8 months. (Id. (citing ECF No. 38-4).)

Reviewing the statistics and the parties' arguments, the Court agrees with Facebook and finds this factor neutral to its determination of whether the Northern District of California is the more convenient forum.

## 2. Local Interest

Facebook argues that "the parties' business operations (or lack thereof) in each district demonstrate that the citizens of the Northern District of California have the strongest interest in adjudicating the matter, because it involves a large established business in their district." (ECF No. 30 at 14.) Facebook also asserts that B.E.'s ties to the Western District of Tennessee should be discounted because it manufactured those ties in anticipation of litigation. (Id. at 13-14.)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because the holder of the patent-in-suit is located here. (ECF No. 38 at 16.) B.E. also asserts that its ties to Tennessee are not "recent, ephemeral, or manufactured for the purposes of litigation." (Id.) Hoyle stated that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E's principal place of business, and that the sources of proof pertinent to the instant case are located in the district. (Hoyle Decl., ECF No. 38-1, ¶¶ 2-4, 7-8.)

The Court finds that this factor does not weigh in favor of transfer. While Facebook has strong local ties to the Northern District of California, the Court finds that B.E.'s connection to the Western District of Tennessee was not manufactured for the purposes of litigation. B.E.'s founder and CEO, who is also the holder of the patent-in-suit, has resided in the district for seven years. B.E.'s connections, therefore, are neither "recent" nor "ephemeral." As a result, Facebook has not demonstrated that the Northern District of California's local interest outweighs that of the Western District of Tennessee.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that, in balancing the statutory factors, Facebook has not demonstrated that the Northern District of California is a more convenient

forum than the Western District of Tennessee. Therefore, Facebook's Motion to Transfer Venue is DENIED.

Accordingly, the Court hereby LIFTS the February 8, 2013, stay of all proceedings. (ECF No. 43.)


**IT IS SO ORDERED** this 12th day of July, 2013.

/s/ Jon P. McCalla_____
CHIEF U.S. DISTRICT JUDGE